96 So.2d 53

James E. MAYFIELD

v.

Anita CASLER, Wife of, and Whitney J. POCHE, et al.

No. 43128.

May 6, 1957.

Rehearing Denied June 10, 1957.

Lenfant & Villere, by Howard W. Lenfant, New Orleans, for plaintiff-appellant.

Cobb & Wright, Herman M. Baginsky, John J. Williams, D. A. McGovern, III, New Orleans, for defendant-appellees.

HAWTHORNE, Justice.

This is a suit instituted by plaintiff James E. Mayfield under the Declaratory Judgments Act, R.S. 13:4231–4246, seeking a construction and declaration of rights under an act of sale and chattel mortgage. Named as defendants are Anita Casler, wife of Whitney J. Poche, and Whitney J. Poche; Industrial Outdoor Displays, a commercial partnership, and its individual members; and Pan-Am Southern Corporation.

On January 27, 1955, defendants Mr. and Mrs. Poche entered into an act of sale with plaintiff, the interpretation of which is sought in this suit. The pertinent provisions of this contract are as follows:

"Sale and Chattel Mortgage
"State of Louisiana,
"Parish of Orleans,

"Be It Known, That on this 27th day of January, Nineteen Hundred and fifty-five Before me, Vernild G. Warner, Notary Public, duly commissioned and qualified in and for the Parish of Orleans, State of Louisiana, Personally Came and Appeared:

"Anita Casler, wife of, and Whitney J. Poche who hereby sells, transfers and conveys unto

James E. Mayfield

here present and accepting and purchasing for himself, his heirs and assigns, and acknowledging due delivery and possession thereof, the following:

"Poche's Super Service Station located at 2025 Gentilly Blvd., at the corner of Paris Avenue, which consists of the business only, no real estate is herein involved, together with lease dated October 5, 1951, wherein Calogero Papania leased the property at 2025 Gentilly Blvd., to Whitney J. Poche which said lease is recorded in Conveyance Office Book 579, folio 282 and has been assigned and transferred to the purchaser herein. Also conveyed herewith are stock and fixtures in accordance with Memorandum of Inventory annexed hereto and made a part hereof as though recited herein in extenso. Lease dated May 4, 1954, from Whitney J. Poche to Wright A. Goolsby, doing business as New Orleans Fire De-

tection Company is transferred to the purchaser herein, proceeds from said New Orleans Fire Detection Company rent to be the property of the purchaser herein.

"This sale is made, executed and accepted subject to Equipment Loan Agreement of Pan-Am Southern Corporation with Whitney J. Poche and Anita C. Poche, dated November 1, 1951; Pan-Am Southern Charge Plate Machine Lease to Mrs. Whitney J. Poche dated May 1, 1953; Pan-Am Southern Corporation Equipment Loan Agreement dated September 29, 1951; and, Product Lease [1] by Whitney J. Poche and Anita C. Poche to Pan-Am Southern Corporation, dated November 1, 1951. The Purchaser herein agrees to comply with all the terms and conditions of the said agreements and lease herein described.

"It is further understood and agreed that notwithstanding the fact that the lease by Calogero Papania to Mr. and Mrs. Whitney J. Poche of the property at 2025 Gentilly Boulevard is herewith assigned to the purchaser herein, the upper apartment at this address is not included in said assignment and will be retained by the Vendor herein.

"This sale is made for the sum of Fifteen Thousand and No/100 ($15,000.00)...... Dollars, of which the purchaser has paid in cash Seven Thousand Five Hundred and

---

1. The record discloses that when Pan-Am executes a lease of a filling station, it requires the lessee to enter into a Dealer's Agreement, under which the lessee is to buy and resell Pan-Am products. The term "Product Lease" used here is a "Dealer's Agreement".

No/100..... Dollars, to the vendor, who hereby acknowledges receipt thereof; and for the balance of said purchase price to-wit the sum of Seven Thousand and Five Hundred and No/100 ($7,500.00)..... Dollars the said purchaser has furnished one promisory note for the sum of $7,500.00 Dollars, payable at the rate of $250.00 per month beginning March 10, 1955, until paid * * *. [Then follow the usual printed provisions in the sale and chattel mortgage form.]"

On October 5, 1951, Calogero Papania leased to Whitney J. Poche a parcel of land at the corner of Gentilly Boulevard and Paris Avenue in New Orleans, on which a service station was being operated. The lease was to begin on March 26, 1952, with a primary term of 10 years and a monthly rental of $300. On November 1, 1951, Poche and his wife leased the same property to Pan-Am Southern Corporation for a primary term of five years beginning March 26, 1952. The rent to be paid by Pan-Am to the Poches was a sum equal to one cent a gallon on all gasoline delivered to the service station for sale during each monthly period of the lease. This lease gave the lessee the option to extend the lease for successive periods of one year each. On the same day Pan-Am Southern Corporation subleased the same property, the service station, back to the Poches for a monthly rental of a sum equal to one-half cent per gallon on all gasoline delivered to the serv-ice station during each monthly period of this lease. This lease was for a term of 12 months beginning March 26, 1952, and was to be automatically renewed for periods of six months unless either party gave timely notice to the other of his desire to cancel the lease. All of these leases were duly and properly recorded.

Under these lease transactions with Pan-Am, the Poches were to realize a net profit of one-half cent on each gallon of gasoline delivered to the service station.

After the Poches had leased the property to Pan-Am, they entered into an act of sale on January 27, 1955, with the plaintiff Mayfield, the pertinent parts of which we have set out above. By this act of sale the Poches sold to Mayfield "Poche's Super Service Station located at 2025 Gentilly Blvd., at the corner of Paris Avenue, which consists of the business only, no real estate is herein involved, together with lease dated October 5, 1951, wherein Calogero Papania leased the property at 2025 Gentilly Blvd., to Whitney J. Poche which said lease * * * has been assigned and transferred to the purchaser herein. Also conveyed herewith are stock and fixtures in accord-ance with Memorandum of Inventory an-nexed hereto and made a part hereof as though recited herein in extenso." The Papania lease mentioned in this act of sale has the following assignment signed by Poche in the presence of two witnesses: "For value received I/we hereby assign

all my/our rights, title and interest in and to the within lease unto James E. Mayfield his heirs, successors or assigns, with full subrogation." This assignment was made with the written consent of the original lessor, Papania.

After Mayfield began to operate the business which he had purchased, he became aware of a one-half cent per gallon charge on his gasoline bill, and when he inquired as to the nature of this charge, he was told that it was for rent on his premises. On March 8, 1955, Pan-Am wrote plaintiff a letter which, among other things, recites:

"We understand that you have entered into an agreement with Mr. and Mrs. Poche whereunder you now occupy the abovementioned service station. We are agreeable to your continuing in possession of the premises under your arrangement with Mr. and Mrs. Poche with the understanding that we hold a valid lease on said property, subject to our sub-lease to Mr. and Mrs. Poche, and that in the event we elect to cancel said sub-lease in accordance with the terms thereof, we will be entitled to possession of the premises. We are also agreeable to your paying rent to us for the account of Mr. and Mrs. Poche with the understanding that we will credit this amount paid by you on the rent due to us by Mr. and Mrs. Poche."

In 1947 Industrial Outdoor Displays leased the right to erect advertising display boards or signs on the top of the service station. At the expiration of this lease the Poches in May of 1955 entered into a new lease with Industrial Outdoor Displays for a period of three years at a yearly rental of $420 payable in equal monthly installments of $35. It will be noted that this act of lease was made after the Poches had sold the service station business to the plaintiff. This lease was also duly recorded.

In due course plaintiff instituted this suit for a declaratory judgment decreeing that the contract of sale dated January 27, 1955, encompassed and included the contracts and agreements existing at the time of the sale or made since that time between the Poches and Industrial Outdoor Displays and the Poches and Pan-Am Southern Corporation, decreeing that the Poches account to him for all sums received from Industrial and Pan-Am, and ordering these latter defendants to make all future payments under their leases and agreements with the Poches to him.

Industrial Outdoor Displays and Pan-Am appeared and filed answers, and sought and obtained an order from the court permitting them to deposit in the registry of the court all rent that had become due since the institution of the suit and all rent that might thereafter become due by them as lessees under the terms of their respective leases

from the Poches. [2] They seek only to have their respective leases from the Poches recognized and enforced and held to be valid, enforceable, and binding on the Poches and all parties claiming under them.

After trial on the merits there was judgment in favor of the Poches decreeing that the act of sale did not encompass the agreements between the Poches and Pan-Am and the agreements between the Poches and Industrial Outdoor Displays, and rejecting all of plaintiff's demands. The judgment also recognized the validity of the leases between the Poches and the other defendants, and held that these leases were binding upon both Mayfield and the Poches. From this judgment plaintiff Mayfield appealed.

To reiterate the facts briefly, the landowner Papania leased to the Poches the property on which the filling station business is conducted. They in turn leased it to Pan-Am, and Pan-Am leased it back to them. All of these leases are of record and were in existence at the time Mayfield purchased the business. Consequently Mayfield in order to operate Poche's Super Service Station, the business which he bought for $15,000, must not only pay the

monthly rental of $300 specified in the landowner's lease to the Poches, but also must pay monthly to Pan-Am an amount equal to one-half cent per gallon for every gallon of gasoline delivered to the filling station for sale.

Although the facts seem to be somewhat involved, narrowed down, the issue between Mayfield and the Poches is: Which is entitled to the monthly rental equal to one cent per gallon on all gasoline delivered to the service station for sale during each monthly period of the lease of the property from the Poches to Pan-Am, and the monthly installments of $35 now due by Industrial Outdoor Displays under its lease? [3]

It is the Poches' contention that the instrument which we are asked to interpret, in order to determine their rights and those of Mayfield under it, was a sublease and not an assignment because it shows that the Poches did not dispose of their entire right in the Papania lease, and that consequently this contract did not include the leases and agreements between them and Pan-Am and Industrial Outdoor Displays.

As the Poches view this case, although Mayfield must pay the monthly rental equal

2. The amount on deposit in the registry of the court exceeds the sum of $2,000.

3. Industrial Outdoor Displays has paid to the Poches, or deposited in the court, the sum of $517.46 covering all rent due under its contracts for the period from January, 1955, through April, 1956. Pan-Am Southern Corporation has likewise paid, or deposited in the court, the sum of $3,926.20 as its rent for the period from January, 1955, through March, 1956.

to one-half cent per gallon to Pan-Am in order to operate the business he bought, the Poches are entitled to receive from Pan-Am the monthly rental equal to one cent per gallon for every gallon of gasoline delivered for sale to the business Mayfield bought. In other words, before the sale to Mayfield, as we have pointed out, the Poches actually netted under the leases with Pan-Am one-half cent per gallon on gasoline, whereas after the sale under their contention they are to net a full one cent. In sum, they say that what the plaintiff actually bought for $15,000 was a few physical effects—including oil, gas, and fixtures which the record shows had a value of not more than $2,500—,the business, and the good will.

The instrument under consideration is designated by the parties to it as an act of sale and chattel mortgage, and is clearly a sale of a business, Poche's Super Service Station, with its stock and fixtures and a transfer or sale of the Papania lease, except for the upper apartment on the premises. The instrument provides that the sale is made subject to certain specifically named contracts and agreements executed by the Poches with Pan-Am, but it is significant that no mention is made in this instrument of the leases executed by the Poches with Pan-Am and Industrial Outdoor Displays. Consequently these leases were not specifically excepted from the sale by the instrument itself.

Article 2461 of our Civil Code provides:

"The sale of a thing includes that of its accessories, and of whatever has been destined for its constant use, unless there be a reservation to the contrary."

Article 2490 states:

"The obligation of delivering the thing includes the accessories and dependencies, without which it would be of no value or service, and likewise everything that has been designed to its perpetual use."

As we have said, it is our view that what Mayfield bought was a business, a filling station business, purchase of which necessarily carried with it the right to do business as a filling station. The Pan-Am leases are obviously part of the service station business conveyed to plaintiff. In the language of the Code, they are accessories and destined to its use, and without them plaintiff could be denied the right to conduct the business which he bought. To say otherwise would, in effect, be saying that Mayfield is occupying the premises and doing business there by the sufferance of Pan-Am since he was not a party to the Pan-Am leases. Therefore under the law these leases were included in the sale since a reservation to the contrary was not made in the act of sale. Art. 2461, La. Civ. Code; see Smith v. Bell, 224 La. 1, 68 So.2d 737.

The Industrial Outdoor Displays lease, in which "Poche's Service Station" is named

.as lessor, permits the lessee to erect signs on the building in which plaintiff is conducting his business and which is a part of the realty described in the Papania lease assigned to plaintiff. Therefore the Poches would not be entitled to this lease and to the revenues flowing from it unless it were specifically excepted in the sale.

Counsel for the Poches argues that because a lease designated as the Poche-Goolsby lease was expressly included in the sale, the other leases were impliedly reserved. We do not think this position is sound under the provisions of Articles 2461 and 2474 of the Louisiana Civil Code.

In conclusion, it is our view that plaintiff Mayfield, under the act of sale which we are here called upon to interpret, acquired the leases described above and is entitled to the rents due under them.

For the reasons assigned the judgment appealed from is affirmed insofar as it recognized the validity of the leases between the Poches and Pan-Am Southern Corporation and the Poches and Industrial Outdoor Displays and held these leases to be binding upon both Mayfield and the Poches. In all other respects the judgment is reversed, annulled, and set aside, and it is ordered that there be judgment declaring that plaintiff Mayfield stand in the place and stead of the defendants Mr. and Mrs. Poche in respect to all leases applicable to this property with Pan-Am Southern Corporation and Industrial Outdoor Displays, enti-

tled to all rents and revenues from these leases after January 27, 1955, the date of the sale. It is further ordered that all sums of money deposited in the registry of the court by defendants Pan-Am Southern Corporation and Industrial Outdoor Displays be paid to plaintiff. It is further ordered that the defendants Mr. and Mrs. Poche account to plaintiff for any rents which may have been paid to them under these leases after the date of the sale, and that plaintiff have judgment for the amount shown to be due by the accounting. Appellees Mr. and Mrs. Whitney J. Poche are to pay all costs of this suit.

HAMLIN, J., recused.